1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

IN RE:                                          )
                                                )
MARKUS W. FRICK,                                )
                                                )
      Debtor.                              )     3:11-cv-898-RCJ-VPC
_____         )
                                                )     **ORDER**
MARKUS W. FRICK,                                )
                                                )
      Appellant,                           )
                                                )
      v.                                   )
                                                )
UNITED STATES TRUSTEE,                          )
                                                )
      Appellee.                            )
                                                )
_____

      Currently before the Court is a bankruptcy appeal (#7) arising from a bankruptcy order granting partial summary judgment to deny a discharge based on false oath or account.  The Court heard oral argument on July 30, 2012.

**BACKGROUND**

**I.    Procedural History**

      On July 3, 2007, Markus W. Frick ("Debtor" or "Frick") filed a voluntary petition for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the District of Nevada.  (CM/ECF for. U.S. Bankr. Ct. for the Dist. of Nev., case no. 07-bk-50853-gwz, Voluntary Pet. (#1) at 1).[1]

      On December 15, 2008, the Acting United States Trustee ("U.S. Trustee") filed a complaint for denial of discharge in Frick's case.  (Compl. for Denial of Discharge (#14-1) at

_____

      [1] Unless otherwise noted, all citations will be to the docket in *In re Frick*, case no. 3:11-cv-898-RCJ-VPC.

3).[2]  The complaint alleged the following.  (*Id.* at 5).  Prior to July 3, 2007, Frick was the sole owner and chief executive officer of Reva International, Ltd. ("Reva"), a Nevada corporation. (*Id.*).  Reva was in the business of developing, manufacturing, and selling speciality hand-held lighting systems and the intellectual property relating thereto.  (*Id.*).  In April 2005, Reva had entered into a contract with the U.S. Department of the Navy for a Long Arm High Intensity Searchlight.  (*Id.*).  In April 2005, Reva renamed its Innovative Lighting Division to "Night Operations Systems."  (*Id.* at 5-6).  On November 17, 2006, Frick and/or Reva incorporated Reva Night Operations Systems in Nevada.  (*Id.* at 6).

The complaint alleged the following.  On March 12, 2007, Night Operations Systems ("NOS") was incorporated in Nevada.  (*Id.*).  Tillman W. Frick ("Tillman"), Frick's brother, was the president and director of NOS.  (*Id.*).  Richard T. Murphy, a certified public accountant for Frick and Reva from July 16, 2006 through July 22, 2008, was the secretary and treasurer of NOS.  (*Id.*).  NOS occupied Reva's former locations.  (*Id.*).  NOS used the equipment that formerly belonged to Reva at those locations.  (*Id.*).  On April 3, 2007, Reva registered as the holder of the trademark "N.O.S" with cross hairs and gun sights over the O.  (*Id.*).  NOS currently used the "N.O.S" mark with cross hairs and gun sights over the O.  (*Id.*).

The complaint alleged five claims warranting the denial of discharge.  (*Id.* at 6-8). Under the first claim for relief, the U.S. Trustee sought a denial of discharge under 11 U.S.C. § 727(a)(2).  (*Id.* at 6).  Under the second claim for relief, the U.S. Trustee sought a denial of discharge under 11 U.S.C. § 727(a)(3).  (*Id.* at 7).  Under the third claim for relief, the U.S. Trustee sought a denial of discharge under 11 U.S.C. § 727(a)(4). (*Id.* at 8).  The U.S. Trustee alleged that Frick had knowingly and fraudulently made a false oath or account in the bankruptcy case by withholding from an officer of the estate recorded information, including books, documents, records, and papers relating to Frick's property or financial affairs.  (*Id.*). Under the fourth claim for relief, the U.S. Trustee sought a denial of discharge under 11 U.S.C. § 727(a)(5).  (*Id.*).  Under the fifth claim for relief, the U.S. Trustee sought a denial of discharge

---

[2]  The adversary proceeding is located at CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz.

1  under 11 U.S.C. § 727(a)(7). (*Id.*).

2  On January 25, 2011, the U.S. Trustee filed a motion for partial summary judgment on

3  the third claim for relief seeking a denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A) for

4  false oath. (Mot. for Partial Summ. J. (#14-1) at 36-37). The U.S. Trustee argued that Frick

5  had made two false representations and oaths. (*Id.* at 41-42). First, the U.S. Trustee asserted

6  that Frick falsely represented that he was not employed by NOS. (*Id.* at 41). The U.S. Trustee

7  argued that, on August 9, 2007, Frick testified under oath that neither he nor Reva had any

8  personal ownership in NOS, was not employed by that company, was not seeking to be

9  employed in that company, that Reva had no ownership in NOS, NOS was not using any

10 patents that Frick owned, Frick did not know what NOS would be manufacturing, and Frick did

11 not know what NOS would be doing. (*Id.* at 41-42). The U.S. Trustee asserted that this sworn

12 testimony was false because, on August 9, 2007, Frick had already entered into an

13 employment agreement with NOS. (*Id.* at 42).

14 Second, the U.S. Trustee asserted that Frick had falsely represented that he had no

15 connection with NOS. (*Id.*). The U.S. Trustee argued that, on June 2, 2008, Frick testified

16 under oath at a Rule 2004 examination that he was not involved with NOS, he was not doing

17 research and development for NOS, and he had no relationship with NOS. (*Id.* at 42-43). The

18 U.S. Trustee asserted that this sworn testimony was false because on June 2, 2008, Frick had

19 entered into an employment agreement and an agreement regarding confidentiality,

20 inventions, non-competition, and non-solicitation with NOS. (*Id.* at 43).

21 In response, Frick objected to the motion for summary judgment. (Obj. to Mot. for

22 Summ. J. (#14-3) at 10). Frick asserted that prior to filing bankruptcy he had signed a

23 confidentiality agreement and employment agreement with NOS but NOS had never given him

24 any compensation, monetary, or otherwise. (*Id.* at 13). Frick argued that he was not an owner

25 or employee of NOS. (*Id.*).

26 In reply, the U.S. Trustee argued that a person could be an employee without being

27 paid. (Reply to Obj. to Mot. for Summ. J. (#14-8) at 24). The U.S. Trustee asserted that even

28 if a person could not be an employee without being paid Frick still falsely represented that he

3

1   had no connections or involvement with NOS, that he did not know what NOS would be

2   manufacturing, and that he did not do research and development for NOS.  (*Id.* at 24-25).[3]

3       On September 26, 2011, the bankruptcy court held a hearing on the partial motion for

4   summary judgment.  (Transcript (#7-9) at 2).  The court made tentative findings which it later

5   adopted.  (*Id.* at 23, 91).  The court believed there was a substantial controversy regarding

6   whether Frick was employed by NOS.  (*Id.* at 23).  However, the court believed Frick's

7   statement under oath that he had no connection to NOS was implausible.  (*Id.* at 24).

8   Specifically, the court stated that the employment agreement had never been voided, there

9   was no indication that the agreement was not going to be enforced, the evidence

10  demonstrated that Frick had acted in accordance with the agreement, and Frick identified

11  himself and held himself out as the CEO of NOS.  (*Id.* at 23-24).  The court's tentative

12  conclusion was to grant partial summary judgment on the basis that Frick had falsely

13  represented that he had no connection or involvement with NOS because that was

14  inconsistent with every document provided to the court.  (*Id.* at 24).

15      The court found that there were false representations and false oaths and that they

16  were material because they related to Frick's business transactions or dealings and

17  detrimentally affected the administration of the estate.  (*Id.* at 25).  The court stated the

18  following:

19      This is not a process of no harm, no foul.  That would undermine the
        fundamental precept of the bankruptcy system, which is for honest debtors and
20      full disclosure and not: Okay, you're right; I should have disclosed it, but nobody
        was really injured.  Well, that's not true.  Trustees have to be able to do their
21      business.  Creditors are entitled to know what's going on.  The system cannot
        be utilized by debtors that give false information, false oath, or conceal the
22      same.  That detrimentally affects the administration of the estate, so they are
        material.

23
24  (*Id.* at 26-27).  The court found that the false oaths, misrepresentations, and concealments

25  that Frick made were material because they hindered the trustees' and creditors' ability to

26      [3] The U.S. Trustee filed a supplement to its motion for partial summary judgment and
27  moved for summary judgment on the fifth cause of action for denial of discharge pursuant to
    11 U.S.C. § 727(a)(7).  (Supp. to Mot. for Summ. J. (#14-8) at 1-2).  Frick filed a response to
28  the supplement.  (Resp. to Mot. for Summ. J. (#14-8) at 31).  The U.S. Trustee is not
    appealing the denial of this motion.

4

investigate his financial affairs.  (*Id.* at 27).  The court did not think that the record established that Frick was an employee of NOS but, as to his involvement with NOS, the court found it "absolutely implausible that Mr. Frick did not consciously and deliberately make false representations when he said he was not involved at all with NOS, that he wasn't involved and had no knowledge of its marketing or its business . . . that he wasn't acting in providing some type of assistance as an unpaid consultant."  (*Id.* at 27-28).

The court stated that reckless disregard for the truth was circumstantial evidence of intent.  (*Id.* at 28).  The court stated that its conclusions were based upon Frick's conduct and demonstrated his actual intent.  (*Id.*).  The court found the following badges of fraud: (a) Frick's concealment and misrepresentation of his involvement with NOS, based on the projections and financing of $5.5 million, showed that there was significant and substantial economic effect to his failure to disclose that could affect the administration of the estate or the return to his creditors; (b) Frick's failure to disclose the employment agreement in the later amendments to his schedules and statements was further evidence of his fraudulent intent; (c) there was a very close relationship between Frick and his brother and Frick intended his testimony to isolate NOS from the old creditors and the anticipated or pending suits or bankruptcies related to himself and Reva; (d) Frick and Reva were in poor financial condition when Reva transferred its assets to NOS; (e) Frick transferred the patents that he invented to NOS; and (f) Frick and Reva had no assets to satisfy creditors and Frick and Reva received no consideration for the transfer of Reva's assets to NOS.  (*Id.* at 28-29).

During oral argument, the court stated the following:

> [Frick] had an employment contract on the date that they filed this petition.  He signed a non-compete.  He signed a confidential–so we know that his own brother considered him to be a consultant.  So to say that he had no involvement whatsoever simply cannot be right and to say he didn't know what NOS was dealing when you see the emails that not only indicate that he knew exactly what it was doing because he was trying to help get additional funds and development of patents and then he was also involved, according to his own brother, in the research and development effort for NOS.

(*Id.* at 66-67).  The court also stated, "I don't care whether he was paid or not–unpaid, independent business consultant.  If you are a business consultant, how can you deny that

1   you didn't know what NOS would be manufacturing? How could you deny that you didn't know

2   what their research and development was? What else would you be consulting about?" (*Id.*

3   at 72).

4          The court found that Frick had pre-petition involvement with NOS because he had an

5   employment contract with NOS and Frick testified on August 9, 2007 and June 2, 2008 that

6   he had no involvement. (*Id.* at 77). The court adopted its tentative conclusions regarding false

7   oath. (*Id.* at 91). The court directed the U.S. Trustee to prepare findings and conclusions

8   pursuant to Federal Rule of Bankruptcy Procedure 7052. (*Id.* at 92). The court and the parties

9   discussed whether the order would be a final order and whether the parties needed to file for

10  interlocutory review. (*Id.* at 92-93). The court told the parties that they needed to figure it out.

11  (*Id.* at 93).

12         On November 3, 2011, the bankruptcy court entered an order granting partial summary

13  judgment denying discharge for false oaths pursuant to 11 U.S.C. § 727(a)(4)(A). (Order (#14-

14  1) at 29-30). The court denied partial summary judgment as to Frick's sworn testimony that

15  he was not employed by NOS, pursuant to 11 U.S.C. § 727(a)(4), and as to the transfer of

16  Reva assets, pursuant to 11 U.S.C. § 727(a)(2), (a)(7). (*Id.* at 31). The court also entered

17  findings of fact and conclusions of law regarding granting partial summary judgment that were

18  consistent with its findings at oral argument. (*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of

19  Nev., case no. 3:08-ap-5176-gwz, Findings of Fact (#121)). Specifically, the court found that

20  Frick made three false oaths: (1) that he had no connection or involvement with NOS; (2) that

21  he did not know what NOS would be manufacturing; and (3) that he was not doing research

22  and development for NOS. (*Id.* at 9).

23  **II.     Summary Judgment Evidence Presented to the Bankruptcy Court**

24         On August 9, 2007, the parties held a 341 meeting of creditors, where Frick testified

25  under oath. (*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-

26  gwz, Meeting of Creditors Transcript (#65-2) at 2). During the meeting, the following

27  questioning took place:

28         [Question]:  Do you or [Reva] personally–or do you personally have any

6

|   |   |
|---|---|
| | ownership interest in Night Operation Systems? |
| [Frick]: | None whatsoever. |
| [Question]: | Are you employed by that entity? |
| [Frick]: | No. |
| [Question]: | Do you seek to be employed by that entity? |
| [Frick]: | Currently, no. |

(*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz, Meeting of Creditors Transcript (#65-3) at 15).

On June 2, 2008, the parties conducted Frick's Rule 2004 examination under oath. (*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz, Rule 2004 Examination Transcript (#65-4) at 2-3). During that examination, the following questioning took place:

|   |   |
|---|---|
| [Trustee]: | Are you involved at all with – am I saying it right, Night Operations Systems? |
| [Frick]: | "Night Operations Systems." No, I'm not involved with that. |

(*Id.* at 24).

|   |   |
|---|---|
| [Trustee]: | You said to your knowledge, Night Operations Systems is doing nothing but research and development. |
| [Frick]: | That's correct. |
| [Trustee]: | So who would be doing the research and development for Night Operations Systems? |
| [Frick]: | That could be number of people. I have no idea. |
| [Trustee]: | It's not you? |
| [Frick]: | No, it's not me. |

(*Id.* at 38).

|   |   |
|---|---|
| [Trustee]: | What is the relationship between Night Operations Systems and you, if any? |
| [Frick]: | There's none. |

(*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz, Rule 2004 Examination Transcript (#65-5) at 14).

On May 14, 2007, Frick and Night Operations Systems entered into an Employment Agreement. (Employment Agreement (#7-8) at 2). The agreement stated that the company was employing Frick as the Chief Executive Officer from May 14, 2007 through May 14, 2010. (*Id.*). The agreement stated that the company would pay Frick a base salary of $400,000 per year. (*Id.*). Frick and a duly authorized representative from Night Operations Systems signed the agreement. (*Id.* at 10).

7

On June 21, 2007, Frick and Tillman Frick, as the president of Night Operations Systems, entered into an agreement regarding confidentiality, inventions, non-competition, and non-solicitation.  (Confidentiality Agreement (#7-7) at 2, 7).

Prior to June 2, 2008, Frick had applied for patents assigned to Night Operations Systems. On December 26, 2007, Frick filed a patent application for a Reflector for Lighting System and Method for Making Same, a Covert Filter for High Intensity Lighting System, a Lens for Lighting System, and High Intensity Lamp and Lighting System, all of which were assigned to Night Operations Systems.  (*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz, U.S. Patent App. (#65-6) at 26-29).  On January 31, 2008, Frick filed a patent application for a Reed and Pressure Switching System for Use in a Lighting System, a Connector for Battery Pack of Lighting System, and Uni-Planar Focal Adjustment System, all of which were assigned to Night Operations Systems.  (*Id.* at 18-19, 24).

On March 29, 2007, Tillman Frick sent Greg Kiernan materials describing NOS.  (*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz, Emails (# 100-6) at 2-5).  The materials identified Frick as the point of contact as the CEO of Night Operations Systems and included an address, phone number, and an NOS email address for Frick.  (*Id.* at 5).

At his deposition, John Lungo, the director of operations at NOS, testified that in November 2007, Frick had input on project proposals.  (*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz, Lungo Depo. (#65-9) at 2, 35-41).  At his deposition, Tillman Frick testified that Frick was an "unpaid independent consultant" with NOS.  (*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz, Tillman Depo. (#100-1) at 8).

On February 12, 2008, NOS held a Board of Directors Ad Hoc Meeting.  (*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz, Board of Directors Ad Hoc Mtg. (#100-10) at 2).  According to the February 5, 2008, board minutes presented at the meeting, Frick, as Chairman, was present and called the February 5, 2008, meeting to order.  (*Id.* at 4).  On May 8, 2008, emails involving an outline to raise capital included Frick and listed

8

1
2

Frick as the Chairman and CEO of NOS.  (*See* CM/ECF for U.S. Bankr. Ct. for the Dist. of Nev., case no. 3:08-ap-5176-gwz, Email (#100-10) at 16-18).

3

**ISSUES ON APPEAL**

4
5

(1)    Whether Local Bankruptcy Rule 9021 requires that this Court reverse and vacate the bankruptcy court's order granting the partial motion for summary judgment because the U.S. Trustee submitted the proposed order late.

6

(2)    Whether the bankruptcy court erred in granting partial summary judgment denying Frick a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

7

**STANDARD OF REVIEW**

8
9
10
11
12
13
14

This Court reviews a bankruptcy court's grant of summary judgment *de novo*.  *In re Caneva*, 550 F.3d at 755, 760 (9th Cir. 2008).  This Court must view the evidence in the light most favorable to the non-moving party and determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the substantive law.  *Id.* A material fact is one that, under governing substantive law could affect the outcome of the case.  *Id.*  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 761.

15
16

This Court reviews the bankruptcy court's interpretation of the Bankruptcy Code and Rules *de novo*.  *In re LPM Corp.*, 300 F.3d 1134, 1136 (9th Cir. 2002).

17
18
19

Absent exceptional circumstances, this Court will not consider arguments raised for the first time on appeal even though it has the discretion to do so.  *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000).

20

**DISCUSSION**

21

**I.     Appellate Jurisdiction**

22
23
24
25
26
27

Pursuant to 28 U.S.C. § 158, the district courts shall have jurisdiction to hear bankruptcy appeals from final judgments, orders, and decrees and, with leave of court, interlocutory orders.  28 U.S.C. § 158(a)(1), (3).  "To become final, the decision, order, or decree must end the litigation, or dispose of a complete claim for relief, and leave nothing for the court to do but execute the judgment."  *In re Kashani*, 190 B.R. 875, 882 (B.A.P. 9th Cir. 1995).  "In order for an interlocutory appeal to be heard, a motion for leave to appeal must be

28

1   filed pursuant to Fed.R.Bankr.P. 8001(b) and 8003." *Id.* If an appellant fails to file a motion

2   for leave to appeal, the court may treat a timely notice of appeal as a motion for leave to

3   appeal. *Id.* The Court must then decide whether to grant or deny the motion for leave to

4   appeal using the standards outlined in 28 U.S.C. § 1292. *Id.* Section 1292(b) provides:

5   When a district judge, in making in a civil action an order not otherwise
    appealable under this section, shall be of the opinion that such order involves
6   a controlling question of law as to which there is substantial ground for
    difference of opinion and that an immediate appeal from the order may
7   materially advance the ultimate termination of the litigation, he shall so state in
    writing in such order.

8   28 U.S.C. § 1292(b).

9   In this case, the Court interprets Frick's timely notice of appeal as one for a motion for

10  leave to appeal. Here, the order granting the motion for partial summary judgment is not a

11  final order because it only granted summary judgment on one of the U.S. Trustee's five claims.

12  However, the Court grants the motion for leave to appeal because the bankruptcy court may

13  deny a discharge on any of the five grounds listed in the U.S. Trustee's complaint. *See* 11

14  U.S.C. § 727(a). If this Court affirms the bankruptcy court's order denying discharge pursuant

15  to 11 U.S.C. § 727(a)(4)(A), Frick's discharge is denied regardless of whether the bankruptcy

16  court also denies discharge based on the other four grounds. As such, resolving this

17  interlocutory appeal will materially advance the ultimate termination of the litigation.

18  **II.    Local Bankruptcy Rule 9021**

19  Frick argues that the U.S. Trustee submitted the proposed order granting partial

20  summary judgment late and violated Local Rule 9021. (Opening Brief (#7) at 5-6). Frick

21  asserts that the U.S. Trustee submitted the proposed order on October 29, 2011. (*Id.* at 6).

22  Frick asserts that the order granting partial motion for summary judgment must be withdrawn

23  without prejudice. (*Id.* at 7).

24  In response, the U.S. Trustee asserts that Frick never objected to the U.S. Trustee's

25  departure from the local rules in the bankruptcy court and thus has forfeited the argument on

26  appeal. (Response Brief (#14) at 27-28). The U.S. Trustee asserts that Frick had

27  opportunities to object to the proposed order but did not. (*Id.* at 28). The U.S. Trustee also

28

10

argues that, after the bankruptcy court entered judgment, Frick could have requested that the court grant him relief from the judgment under Bankruptcy Rule 9024, but did not.  (*Id.*).

In reply, Frick asserts that the bankruptcy court did not have discretion to accept the U.S. Trustee's untimely order and erred in doing so.  (Reply Brief (#15) at 9).

Pursuant to Nevada Local Rule of Bankruptcy Practice 9021, the attorney for the prevailing party must prepare all proposed findings of fact, conclusions of law, judgments and orders.  Loc. R. 9021(a)(1).  The proposed order must be submitted to the court promptly after the conclusion of the hearing, but in no event later than 28 days after the hearing has concluded.  Loc. R. 9021(a)(3).  If no proposed order is submitted within 28 days after the date upon which the matter was heard, any party in interest may submit a proposed order in a manner that complies with this Rule.  Loc. R. 9021(a)(4).  If no order is submitted within 35 days of a hearing, the motion or other matter will be deemed withdrawn, without prejudice, subject to a motion under Fed. R. Bankr. P. 9024.  Loc. R. 9021(a)(5).

The counsel preparing the order must transmit the order to all counsel or unrepresented parties who appeared at the hearing.  Loc. R. 9021(b)(1).  Unless the court orders otherwise, parties will have three business days from receiving the proposed orders to communicate their approval or disapproval to the transmitting counsel.  Loc. R. 9021(b)(2).  If disapproved, the disapproving party will have five business days from receiving the document to serve and file with the court a detailed statement of objections and an alternate proposal for the document.  Loc. R. 9021(b)(2)(A).

In this case, the bankruptcy court held a hearing on the motion for partial summary judgment on September 26, 2011.  The U.S. Trustee, as the prevailing party, submitted a proposed order to Frick on October 29, 2011.  (*See* Opening Brief (#7) at 6); Response Brief (#14) at 18).  Frick did not endorse or object to the proposed order.  (*See* Response Brief (#14) at 18-19).  On November 3, 2011, the U.S. Trustee submitted the proposed order to the bankruptcy court and the court entered the order the same day.  (*See id.* at 19).

Pursuant to the Local Rules, the U.S. Trustee should have submitted the proposed order to Frick no later than October 24, 2011, or the twenty-eighth day after the hearing had

concluded.  *See* Loc. R. 9021(a)(3).  Instead, the U.S. Trustee submitted his proposed order to Frick on October 29, 2011, or the thirty-third day after the hearing had concluded.  The U.S. Trustee then waited three business days–Monday, October 31st; Tuesday, November 1st; and Wednesday, November 2nd–for Frick to communicate his approval or disapproval of the proposed order.  *See* Loc. R. 9021(b)(2).  After hearing nothing from Frick, the U.S. Trustee submitted the proposed order to the bankruptcy court on Thursday, November 3, 2011.

In this case, the Court finds that the bankruptcy court did not err when it entered the order granting the motion for partial summary judgment.  First, Frick never raised the issue of untimeliness before the bankruptcy court and, thus, never gave the bankruptcy court the opportunity to resolve this issue.  Second, Local Rule 1001(d) states that the "Rules are not intended to limit the discretion of the Court.  The Court may, on a showing of good cause, waive any of these Rules, or make additional orders as it may deem appropriate and in the interests of justice."

Here, Frick seeks a remedy that is not warranted under the Local Rules.  The Local Rules state that the motion will be deemed withdrawn, without prejudice, if no order is submitted within 35 days of a hearing and upon motion under Fed. R. Bankr. P. 9024.  *See* Loc. R. 9021(a)(5).  As demonstrated by the record, the U.S. Trustee submitted a proposed order within 33 days of the hearing and, thus, Local Rule 9021(a)(5), was never invoked.  Moreover, Frick never filed a motion in bankruptcy court to withdraw the motion.

Additionally, pursuant to the Local Rules, the only remedy for when a prevailing party fails to submit a proposed order by the 28th day is to permit "any party in interest" to submit a proposed order between the 29th and 34th days.  *See* Loc. R. 9021(a)(4).  Frick did not choose to follow this remedy.  Because the remedy permits "any party in interest" to submit a proposed order during the 29th and 34th days, the U.S. Trustee could still submit a proposed order, which it did.  Pursuant to the Local Rules, Frick then had three business days to communicate his approval or disapproval to the U.S. Trustee regarding the proposed order.  Frick made no communications to the U.S. Trustee and, on the fourth business day, the U.S. Trustee submitted the proposed order to the court.  As such, the bankruptcy court complied

with the Local Rules and did not err in entering the order granting partial summary judgment to the U.S. Trustee.

## III.    Partial Motion for Summary Judgment

Frick argues that the bankruptcy court erred in granting partial summary judgment because genuine issues of material fact exist. (Opening Brief (#7) at 12). Frick asserts that the bankruptcy court failed to make adequate findings to support summary judgment because the court did not make any findings that he concealed any assets and there were no allegations that potential assets did exist. (*Id.* at 14-15). Frick argues that the bankruptcy court refused to make findings that the following were potential assets: (1) patent applications with himself listed as the inventor; (2) that Reva had transferred assets to NOS; (3) the use of a Reva trademark by NOS; and (4) his employment with NOS. (*Id.* at 15). Frick asserts that his purported false oaths and misrepresentations were not material because when there are no assets there is no duty to disclose and because there were no assets his statements could not detrimentally affect the administration of the debtor's estate. (*Id.* at 22).

In response, the U.S. Trustee argues that the bankruptcy court did not err in granting summary judgment because the undisputed facts established that Frick had knowingly and fraudulently misrepresented facts under oath. (Response Brief (#14) at 21). The U.S. Trustee argues that 11 U.S.C. § 727(a)(4)(A) does not require proof that Frick concealed assets. (*Id.* at 22). The U.S. Trustee asserts that the law does not state that a misrepresentation must involve a debtor's assets to be material. (*Id.* at 23). The U.S. Trustee argues that Frick's false oath did detrimentally affect the administration of the estate because a trustee has to investigate the existence of potential assets whether or not valuable assets are ultimately found and a lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy. (*Id.* at 24).

In reply, Frick asserts that the U.S. Trustee failed to prove by a preponderance of the evidence that he made a false oath in connection with his employment testimony. (Reply Brief (#15) at 6). He asserts that he was never employed by NOS. (*Id.* at 7). He asserts that even if he did make a false oath, he did not hinder the trustees' or creditors' abilities to investigate

his financial affairs because there was no evidence that he was employed or derived any financial benefit from NOS.  (*Id.*).

Pursuant to 11 U.S.C. § 727, the bankruptcy court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account.  11 U.S.C. § 727(a)(4)(A).  "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations."  *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010).

To prevail on a § 727(a)(4)(A) claim, the U.S. Trustee must establish by a preponderance of the evidence that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently."  *Id.* at 1197.  This Court reviews a finding of fraudulent intent, a finding of fact, for clear error.  *Id.*

First, the evidence demonstrates that Frick made three false oaths in connection with the case when he testified under oath at his Rule 2004 examination and 341 creditors' meeting that:  (1) he had no connection or involvement with NOS; (2) he did not know what NOS would be manufacturing; and (3) he was not doing research and development for NOS.  On August 9, 2007, Frick testified under oath that he did not have any personal interest in NOS, was not employed by NOS, and was not seeking to be employed by that entity.  On June 2, 2008, Frick testified under oath that he was not involved with NOS, he was not doing research and development for NOS, and he had no relationship with NOS.  However, the evidence demonstrates that Frick was connected and involved with NOS, that he did know what they would be manufacturing, and that he was involved with the research and development for NOS.  Specifically, Frick and NOS had entered into an employment agreement and a confidentiality agreement in May and June 2007.  Even if Frick was not a paid employee, as he claims, he still was connected to the company.  Additionally, from December 26, 2007 through January 31, 2008, Frick had filed patent applications in his name with assignments to NOS.  In November 2007, Frick was communicating with John Lungo, the director of operations, about project proposals for NOS.  In February 2008, Frick called NOS's board

14

1   meeting to order.  In May 2008, Frick was aware that NOS was listing him as the Chairman

2   and CEO of NOS.  As such, the bankruptcy court did not err when it found that Frick had made

3   three false oaths in connection with the bankruptcy concerning his involvement with NOS.

4          Second, § 727(a)(4)(A) requires that the relevant false oaths relate to a material fact.

5   "A fact is material if it bears a relationship to the debtor's business transactions or estate, or

6   concerns the discovery of assets, business dealings, or the existence and disposition of the

7   debtor's property."  *Retz*, 606 F.3d at 1198 (internal quotations omitted).  "An omission or

8   misstatement that 'detrimentally affects administration of the estate is material."  *Id.*

9   "Materiality is judged not by the *actual* effect of the fraudulent misrepresentation or

10  concealment, however, but by the effect it was *capable* of producing."  *In re Guadarrama*, 284

11  B.R. 463, 475 (C.D. Cal. 2002).

12         In this case, the bankruptcy court did not err in finding that the false oaths related to a

13  material fact, specifically Frick's business transactions and dealings with NOS, and prevented

14  the trustees and creditors from having accurate information related to his financial and

15  business affairs.  Frick's false oaths detrimentally affected the administration of the estate

16  because Frick prevented the trustees and creditors from being able to conduct their

17  investigation into his affairs.  Although Frick alleges now that he made no money from NOS,

18  his false oaths prevented the trustees and creditors from investigating the truth of that

19  statement at the time.  As such, Frick's false oaths were material.

20         Moreover, despite what Frick argues, the law does not require that the false oath relate

21  to an asset.  The law specifically states that a false oath is material if it relates to the debtor's

22  business transactions *or* estate, *or* concerns the discovery of assets, business dealings, *or* the

23  existence and disposition of the debtor's property.  Assets is listed separately from business

24  transactions and business dealings.

25         Third, § 727(a)(4)(A) requires the debtor to act knowingly in making the false oath.  "A

26  debtor acts knowingly if he or she acts deliberately and consciously."  *Retz*, 606 F.3d at 1198

27  (internal quotations omitted).  In this case, Frick's false oaths were knowingly given because

28  he deliberately and consciously answered the questions relating to his involvement with NOS

1   in the negative.  As such, the bankruptcy court did not err in finding that Frick knowingly made

2   false oaths.

3   Finally, § 727(a)(4)(A) requires fraudulent intent.  To demonstrate fraudulent intent, the

4   U.S. Trustee had the burden of demonstrating that: (1) Frick made the representations, i.e. the

5   false oaths during the Rule 2004 examination and 341 creditors' meeting; (2) at the time that

6   Frick knew they were false; and (3) Frick made them with the intention and purpose of

7   deceiving the creditors. *Retz*, 606 F.3d at 1198-99.  "Intent is usually proven by circumstantial

8   evidence or by inferences drawn from the debtor's conduct." *Id.* at 1199.  "Reckless

9   indifference or disregard for the truth may be circumstantial evidence of intent, but is not

10  sufficient, alone, to constitute fraudulent intent." *Id.*

11  In this case, the bankruptcy court did not err in finding that Frick had fraudulent intent

12  to make false oaths.  In addition, to the badges of fraud listed by the bankruptcy court, there

13  is other evidence that Frick intended to conceal his business relations and dealings with NOS.

14  Although Frick now asserts that he did not get paid by NOS, his employment contract had

15  stated that he would be receiving $400,000 per year from NOS.  Additionally during the time

16  he denied any involvement with NOS he was specifically applying for patents for inventions

17  he had made but assigning them to NOS.  Frick also permitted NOS to call him the CEO of

18  NOS and held himself out to be a Chairman and CEO of NOS during that time.  Therefore, the

19  evidence demonstrates that Frick intended to deceive creditors by stating that he had no

20  involvement with NOS when, in fact, Frick was actively participating in NOS's affairs.  As such,

21  Frick did make the oaths with fraudulent intent.  Therefore, the evidence demonstrates that

22  Frick knowingly and fraudulently made false oaths pursuant to 11 U.S.C. § 727(a)(4)(A).

23  Accordingly, the Court AFFIRMS the bankruptcy court's order granting the U.S. Trustee's

24  motion for partial summary judgment pursuant to § 727(a)(4)(A).

25  ///

26  ///

27  ///

28  ///

16

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the bankruptcy court's order granting the U.S. Trustee's motion for partial summary judgment pursuant to § 727(a)(4)(A) is AFFIRMED.

DATED: This ___3rd___ day of August, 2012.

_____
United States District Judge

17